The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. We have, we have a three-judge panel. Judge Rushing is on by audio and Judge Motz and I are on with the video. And we'll proceed with the first two cases and probably take a break as would be normal unless somebody wishes otherwise and then continue with the last two cases. And the first case is United States v. Garcia. And Ms. Baldwin, we'll hear from you. I think you're first up. Good morning, Your Honors. May it please the Court. Melissa Baldwin on behalf of David Garcia. We are asking the Court to hold that Mr. Garcia's Fourth Amendment rights were violated by an unreasonable traffic stop and an unreasonable automobile search. Here, the officer lacked a reasonable belief that Mr. Garcia using the left lane to avoid a bump in the right lane violated traffic law. Under North Carolina traffic law, a motorist is generally required to stay on the right half of a highway subject to certain exceptions, including one for obstructions. Under this Court's decision in United States v. Feliciana, that means the officer needed to articulate reasonable suspicion for believing that none of the exceptions authorizing use of the left lane applied. The officer had no such belief here. The officer knew that there was a visual but unmarked bump in the road that spanned the entire right lane that was significant enough to cause his car to bounce when he proceeded over it and that Mr. Garcia used the left lane to avoid that bump safely and go immediately back into the right lane of travel. Ms. Baldwin, this is Judge Reshing. Hi. Can I ask you, I wanted to ask a little bit about your reliance on Feliciana for this standard. In Feliciana, the violation wasn't visible, right? It was a permit case so that the truck was required to have a permit and an officer couldn't tell watching the truck drive by whether it had one or not. There was no requirement for the truck to have a permit. Whereas here, the officer could see the violation happening. And it would seem to me that that distinguishes our precedent in Feliciana, that we weren't, Feliciana is not saying officer has to rule out every possible legal excuse. But instead, there, the officer couldn't see the violation. Do you think that's a pertinent distinction here? No, I do not. Because in Feliciana, I would agree what you the visual, the ability to visually observe the crossing of the lane versus a permit is a factual difference. And so the application of the facts may different, but the standard should be the same. And that's because just as it's wholly legal behavior to see for a commercial vehicle to be on a parkway, unless you have a basis to permit, the same holds true here. If an officer sees someone crossing the lane, that is wholly innocent behavior, unless he can, unless he can articulate why no of the exceptions that render that behavior legal apply. I don't think that's ever been how we've applied the law, right? It's not innocent behavior, it violates the law to go into the other lane. And we've never said an officer has to rule out every, every legal excuse. Well, I would disagree with that is, is it is innocent behavior if you cross into the left lane under one of the exceptions that authorizes that. So simply seeing someone use the left lane is wholly innocent conduct unless they have, unless the officer can point to evidence suggesting the exceptions don't apply. And indeed, three state courts that have dealt with similar maintaining the right half of a highway have specified these two factors. The officer both needs to see the vehicle crossing into the left lane and have a basis to believe none of the exceptions apply, or there's not some other legitimate factors such as road conditions. And that is the Edwards case out of Maryland, the Davis case out of Tennessee, and the Chavez versus Zubera case out of Kansas. So here the officer here, the officer was well aware that there was a bump in the road that constituted an obstruction, it made, it made either the road less safe or convenient, or it slowed the progression thereof. And as a result, he knew there was an obstruction, and he knew Mr. Garcia used the left lane to avoid that obstruction. Under these circumstances, the officer didn't have a reasonable belief that he was violating the law by using the left lane. And so he decided to use the left lane to avoid an obstruction, as the North Carolina traffic statute expressly permits. Well, I thought that there was testimony, hi, this is Judge Motz. I thought there was testimony that the supervisor said that this or some witness said that this was smaller than a speed bump. So the supervisor, the supervisor gave testimony, but smaller than a speed bump could be, you know, a speed hump, which is a traffic control device, it's not quite with a raise, not quite as much as a speed bump, but nonetheless, as a traffic control device designed to slow traffic. In other words, in a... But you don't have to avoid it. Oh, so you don't have to avoid it. Of course, if an officer sees a motorist, avoiding a clearly delineated traffic control device, that is surely different than seeing an unmarked one. You've looked at the picture, haven't you? From the police vehicle. It looked to me like an absolutely normal highway patch. And every patch is usually raised by an inch or so, so they don't depress when the weather gets warm and the tar gets pressed down. But I must say, if I were a driver, I might have slowed down a little bit on the patch until I see how, whether it was anything, but the picture showed it as a very normal highway patch. I don't, would hardly call that an obstruction, at least we don't have to conclusively determine that. We just have to determine whether the officer reasonably concluded that it was not an obstruction. Sure. Judge Niemeyer, and your questioning brings up two important points, and it's why the traffic stop was unreasonable here. And that's because the government didn't offer evidence of the experience. I mean, if the officer had testified, listen, I patrolled the area, I've seen 150 cars go past this thing in the last two weeks. All we need to use is some common sense. I looked at the picture. And I must say, I'm a driver like anybody else, and I can bring to bear the experiences that everybody brings on the road. And that did, was not what I would call in common parlance, an obstruction. It was at best, it was at best a minor rise with respect to a patch. But as Judge Mott said, it wasn't even a speed bump, and a speed bumps are legitimate, you slow down to go over them. But this was not close to that. This was basically just a flat patch in the highway. And the officer said he went across it normally. He didn't hesitate to go across it. And sure, there was a little rumble as you go up and down it. But I think your elevation of that little piece of highway to the in view of the officer's own belief that he didn't think it was an obstruction. And our determination isn't whether it was or not, but whether he had a reasonable take on that. Sure. Well, a couple of points. The officer never testified as to his belief as to whether or not it was an obstruction. And second of all, the evidence here does suggest, the highway maintenance supervisor acknowledged this was, quote, not a bad bump. And you would do as you go across it. The video shows it bouncing. And so here the problem is, all they had was the officer drove over it. But that doesn't tell us anything about whether it was necessary for Mr. Garcia to go over it. Necessary is needed, and it triggers a context-specific inquiry, which gets us to the cases of Gregory versus Freeman from the Sixth and Tenth Circuits, where they acknowledge that these traffic laws that include a context-specific inquiry to determine if there's a violation, in those cases, it was staying as practically as possible in a single lane of traffic. They said, listen, you can't just cite someone for deviating from their lane as a violation of practically as possible, because in those cases, it was a windy road, or it was a top-heavy vehicle and slight deviations. And so here we have the same thing, where we have a visually obvious thing in the road that the record establishes would slow, hinder, impede. It would have an impact on traveling vehicles. And the government could have presented evidence to show that an officer reasonably believed this violated the law, but it didn't do so. The officer simply pointed to the fact he crossed the left lane, which is entirely legal if an exception doesn't apply, and the fact he drove over it. But a hallmark of reasonable suspicion to pull someone over is that it can't ensnare a substantial amount of innocent traffic, of, excuse me, innocent motorists. And traffic laws are full of these context-specific inquiries, this obstruction, a speed no greater than reasonable under current conditions, distance from, keeping a safe distance from the car in front of you. All of these... So this was a double yellow line. And the double yellow lines, every driver knows, is a warning that it's unsafe to be on the other side of the lane. There may be a curve right up ahead, or there may be blocked vision. And so it's no small thing to cross over a double solid line. And I just don't think... The burden is to demonstrate that the officer acted unreasonably, didn't have reasonable belief to believe that it was illegal to cross the double line. And you're saying, well, we'll measure the height of the hump, we'll measure how many people went across it. It wasn't even a hump, it was a bump. If you put in the asphalt exactly level with the highway, within a couple of weeks, the asphalt would have been depressed and it created a bump the other way. Would that be an obstruction? Yes, it could be. I think there would need to be more facts to pull someone over. And going back to the exception of crossing the double line could be dangerous. Sure, it could, but the problem is here, the officer testified that it was safe to cross the yellow lines in the circumstance. And of course, the canon of construction, the more specific controls over the general. So if there's an obstruction in the road, then you're permitted to cross those lines to avoid it. Otherwise, the exception is authorizing drivers to do something that the more general statute would prohibit. And so now I'd like to turn to the automobile search here, because the officers lacked a basis to either perform a Gantt evidentiary search, because they had no reasonable suspicion that evidence relevant to the offensive arrest would be present in the vehicle. So here the offensive arrest was for carrying concealed brass knuckles. The officers had no reasonable belief that evidence related to Mr. Garcia's possession of the brass knuckles would be in the car. As the North Carolina McZorn case said, once the officer for Mr. Garcia found those brass knuckles, he had absolute knowledge that this crime was committed. And thus it falls under in line with the 11th- Wouldn't it be fairer to the officer to give him the full benefit of what he saw? In other words, he saw the brass knuckles. He saw a knife. He saw a vest. He knew of the destination. This guy had an open warrants against them. We're at two o'clock in the morning. And he's going to a location where there's a domestic spat of some kind. And the question then is he was arrested both for having the brass knuckles and for the warrant. And the question is, okay, what other kind of arms are in there supporting that? I would assume that you see a person in those circumstances, you could well suppose that there are further arms in the car. But I would think the more difficult hill you have to climb is the probable cause issue. But you can go ahead with whatever, however you wish to present it. No, no, no, certainly. So I wanted to make that point just about, you know, the lack of evidence relevant to the offense of arrest. But of course, if there's probable cause to search the vehicle, you don't need to rely on Gant. And here, if they're looking for other weapons, so other crimes than the one for which they had probable cause to arrest Mr. Garcia, they needed probable cause. And here, the totality of circumstances did not give rise to a reasonable belief that other weapons would be found in the car. And that's because there is nothing to support the idea that where there's some weapons, there must be more weapons. The government- It doesn't have to be must more. The question is, is probable cause is a much lower standard than must. It's not even, it's what a reasonable officer with the experience he have would believe. And I would think it's pretty normal for an officer to see one weapon that there may be other weapons, there may be ammunition, there may be a gun. This guy was not allowed to carry a gun. And he doesn't have to put blinders on, he just has to act reasonably. I mean, he doesn't have to put blinders on, but the idea that because he found two brass knuckles in pockets reasonably leads to the conclusion- Let's add the knife and let's add the vest and let's add all the other things that he's putting in there. This officer sees a picture and the question is, what conclusions can he reasonably draw from that picture? And the only fair way to argue it is to give him the benefit of all that. So, well, I'm coming from that perspective because I think all those other factors, they are indeed relevant. But the fact he was going to assist as a friend with an aggressor, he had a vest on, he had a knife, and most of that rises to reasonable suspicion of guns. So, the finding of the brass knuckles can only transform the reasonable suspicion that he may be armed into probable cause to search the vehicle for other weapons is if an officer can reasonably conclude that some guns equals more guns. And we believe the Supreme Court case in Messerschmitt shows that it is not a rational legal inference to say because there are some weapons, there are going to be more weapons. The officers here needed to do more to establish probable cause to look for more weapons. I see my time is up, so I will- we'll bring you back. All right, Mr. Enright. Thank you, your honor. May it please the court. Anthony Enright for the United States. The district court properly denied David Joe Garcia's motion to suppress. I'll start saying the Fourth Amendment authorized Sergeant Warren to stop Mr. Garcia's Nissan after he observed Garcia driving the oncoming lane of traffic. The district court made a factual finding that there was no obstruction caused by the black asphalt paving patch. And I think the question for this court, or at least a basic question for this court would be, is that clearly erroneous? And I think the answer is no. He had testimony from the person who was responsible for installing that patch and who was thoroughly familiar with that, the highway maintenance supervisor. And he testified, A, it's not an obstruction. B, it was put there to, quote, make sure the road was safe for travel and wasn't impeding traffic, which is the ordinary definition of an obstruction. It says it was just a little bit of a rise. And that's, of course, not all that the officer had. The officer saw it for himself, as Judge Niemeyer alluded to, or I'm sorry, the court saw it for itself because the court saw the video and the photograph. And he heard Sergeant Warren testify that he drove over it, and he saw the dash cam of that event. The district court was well within its authority as a fact finder to find it wasn't an obstruction. But even the court doesn't even need to go that far because the standard is, as your honors mentioned, reasonable suspicion, considerably less than proof beyond a reasonable doubt, considerably less even than a preponderance of the evidence or probable cause. Sergeant Warren observed the entire offense. He observed him go into the other traffic lane, and he observed what Garcia later said was the reason for going into the other lane. And he had reason to, he had objective facts creating more than a hunch that he committed the traffic violation, violated the rule requiring him to stay in the right lane. And that justifies the stop under the Fourth Amendment. After he stopped Mr. Garcia, he had two justifications under the Fourth Amendment to search the car. The first is probable cause. And as Judge Niemeyer alluded to, the facts amply established probable cause. This court held he was carrying contraband, illegally concealed weapons. The officer knew that before he searched the car. And this court did hold in Baker that the probable cause standard is satisfied when a police officer lawfully searches a vehicle's recent occupant and finds contraband on his person. But the court doesn't need to, that's just the beginning. He was, he told, he gave the officer information indicating he was going to go confront somebody in the middle of the night who was harassing a friend. And he was armed with illegal weapons and a knife. He was on supervised release for a gun offense. And he was wearing a tactical ballistic vest. The officer had reasonably, there's more than a fair or probable cause in the sense of more than a fair probability, which is all that it requires, to believe that there would be additional concealed weapons or other contraband or evidence of those crimes found in the car. But the court doesn't need to go that far because as my... Let me ask you a question. He had a tactical vest and the vest had pockets to put in what the Kevlar protective shields or whatever they are. Are they legal for the public to have or do you need a permit or is that okay to wear a vest? Your Honor, I'm honestly not a hundred percent sure. My understanding is that it probably ordinarily is okay. And I can tell you, I'm not speaking based on the record in this case. There was no testimony in this case or indication that that was illegal with or without a plate in this case. Based on what I'm admitting is not very good knowledge from outside this case, I think the answer is those are ordinarily legal in North Carolina, but... Well, my question really would lead to the question of the vest is indicative of something. This was not a keep warm vest. This was a vest designed to protect somebody from harm during some kind of combat or a... Whether a search might have uncovered the plates that are insertable in that. But if the plates are not illegal to have, that wouldn't carry as much weight. Your Honor, I can see that's a totally fair point that I simply didn't think about until Your Honor mentioned it. I don't think the court needs to go that far because what he didn't just have the vest, but he had circumstances indicating that he was wearing that vest for a potentially an armed confrontation. He also had illegal weapons on him. And this court, the Gantt rule, which is that you can search a car if a recent occupant was arrested for evidence relevant to the crime of arrest. What Gantt did was it said, we're adopting the concurring opinion of Justice Scalia and Thornton. Thornton involved a very similar scenario where someone was arrested and they had contraband on him. It was drugs. And what Justice Scalia said, what he concluded Thornton with is, Tishner was lawfully arrested for a drug offense. It was reasonable for Officer Nichols to believe that further contraband or similar evidence relevant to the crime for which he had been I think that answers the question of whether that standard would allow you to search for additional weapons. That's true. I think whether you would consider the crime complete with possession of brass knuckles or not, because the Supreme Court in Gantt explicitly adopted in toto Justice Scalia's concurring opinion, which says you can search for additional contraband, at least of the same kind. But either way, I don't think the court needs to go resolve that question, because the evidence is, as Justice Niemeyer mentioned, is well beyond simple possession of a concealed weapon. These were circumstances that indicated to an objectively reasonable officer that there would be evidence of a crime found in the car, probably be evidence found in the car. And that is all that is needed when you're searching an automobile to comply with the Fourth Amendment. So because the district court correctly found that the Sergeant Warren complied with the Fourth Amendment when he conducted the search, it properly denied the motion to suppress. And if the court has no further questions. All right. Thank you. All right. Thank you, Your Honor. Thank you, Your Honor. So a couple of points I want to address is, first, the government's reliance on United States v. Baker. And its reliance is misplaced because there the court was facing a Sixth Amendment ineffective assistance of counsel. This is a Fourth Amendment case. In words, the statement made in Baker that wasn't essential to its holding is actually an issue here. And the parties have briefed and argued it. So simply relying on that statement should not be enough here. And second of all, going back to Gantt and the idea that finding contraband necessarily means there's going to be more. And again, I think there is certainly much more support for that in the drug specific context. But the government has insight. But the excuse me, but the the weapons rationale or analogy is not the same. And we know that because of Master Schmitt, if it was as simple as like, listen, we know this gang member has one gun. So you can look at his home for other guns. There wouldn't have been this fractured contentious case where the court explicitly noted, we're not even saying there was probable cause. We're saying the was a gang member who tried to kill his girlfriend. And we know he had one gun. It wasn't plain. It wasn't unreasonable for them to rely on a warrant to search for other guns. So it is certainly the presumption that some cases hold where some drugs equals more drugs certainly shouldn't be extended to the weapons case. Again, the government could have offered evidence if it is so common sense that, you know, listen, we found some weapons. That means there's probably going to be more weapons. The government should be able to elicit that testimony there. I'm not sure that I'm not sure that's the logical sequence that the officer reasonable officer would follow. The reasonable officer is looking at this situation that in the middle of the night, this man is being called into a potentially violent dispute. He's armed with knuckles. He's had a past record of having firearms. He's not allowed to have firearms. He has a large knife. He has a vest, a tactical vest. I think it's perfectly reasonable to assume that the rest of the arms are in the car. The rest of the arms being, do you go into a combat with just knuckles or do you go in with some better arms? And this guy knows street fighting and so forth involves arms. That's a scenario he's thinking. It's not a necessity. It's a question of it's reasonable is it reasonably a probable cause. And we look at what a reasonable officer would have concluded. This test that you sort of argue is that seeing one arm doesn't necessarily mean there's another arm. You're absolutely right. Absolutely right on that. But I'm not sure that's the mental process and it certainly isn't the standard that we should be applying. No, sure. But that presumption is needed because otherwise there's reasonable suspicion. So just a cop pulls over someone, he knows he's on probation for theft, on route to a pawn store, finds a stolen ring and a stolen watch. That doesn't give him a reasonable belief there will be more stolen property in the car. But I have a short amount of time and I want to go back to the traffic stop because the government's contention that the obstruction is clearly erroneous, we believe is wrong. The testimony shows that the maintenance supervisor was basing his testimony on a legally wrong definition of obstruction, which is does it endanger the public, which is much higher than even the government contends it legally is. So under Boyce Corporation and Pullman standard, that factual finding can be set alone on that basis alone because it's infected by a legal error. And here again, the objective facts are simply that he crossed the line and the officer didn't. But as we pointed out that it's going to ensnare, I'm sorry, may I just finish my thought? Yes, please. That is going to ensnare a substantial amount of motorists if there is a traffic law permitting discretionary decisions based on road conditions and the motorist simply made a different call than the officer. For those reasons, we ask that you reverse the suppression order, vacate the conviction and remand this case. Thank you. All right. Thank you, Ms. Baldwin. You know, in the normal procedure now we get off the bench, we come down into the well of the court and shake hands with you. Thank you for your arguments. And we do that virtually now. And thank you both for your arguments and wish you a best day.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Allison J. Rushing